# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERNESTO MANUEL GONZALEZ, et al.,<br><br>Defendants. | Case No. 2:16-cr-00265-GMN-CWH<br><br>**REPORT AND RECOMMENDATION** |

Presently before the court is defendant Ernesto Manuel Gonzalez's motion to suppress evidence pertaining to RICO Overt Act #5 for Fourth and Fifth Amendment violation (ECF No. 781), filed on August 7, 2018, the government's response (ECF No. 1164), filed on September 26, 2018, and Gonzalez's reply (ECF No. 1233), filed October 8, 2018.  The court conducted an evidentiary hearing on December 14, 2018 and January 17, 2019.  (Mins. of Proceedings (ECF Nos. 1403, 1450).  At the hearings, the court admitted into evidence the government's exhibits 1-6, and defendant's exhibits C, A, B, F, F-1, and E-E-6.  (Mins. of Proceedings (ECF No. 1403).)  Defendant's exhibit J was conditionally admitted.  (Mins. of Proceedings (ECF No. 1450).)  The government then submitted a post-hearing brief (ECF No. 1531), filed March 1, 2019, and the defense responded (ECF No. 1542), filed March 15, 2019, and the government replied (ECF No. 1547), filed March 22, 2019.

## I. BACKGROUND

In June 2017, the government indicted Gonzalez, along with 22 other alleged Vagos members, for conspiring to participate in a racketeering enterprise in violation of the Racketeering Influenced and Corrupt Organizations Act (RICO). (Superseding Indictment (ECF No. 13).)  In the indictment, the government identified 103 overt acts representative of the criminal conduct that Gonzalez and his alleged co-conspirators performed or caused to be

performed in furtherance of the overall objective of the RICO conspiracy. (*See id.* at 18-35.) Gonzalez is also charged with murder in aid of the racketeering activity under 18 U.S.C. § 1959(a)(1) and 2, and a related firearm offense under 18 U.S.C. § 924(j)(1) and 2. (*Id.* at 37-39.)

RICO conspiracy overt act number five alleges that

> [o]n or about February 13, 2010, Ernesto Manuel [Gonzalez], a/k/a 'Romeo,' possessed metal knuckles and a loaded handgun during a traffic stop by law enforcement. [Gonzalez] admitted that he carried the handgun because of his 'lifestyle,' and protection against the rival 'Hells Angels.'

(*Id.* at 19.) Gonzalez now moves to suppress evidence seized as the result of this traffic stop, arguing that his Fourth and Fifth Amendment rights were violated. (Mot. to Suppress (ECF No. 781).)

## II.   TESTIMONY AND EVIDENCE

San Jose Police officer Matthew Kirby testified that on February 13, 2010, he was patrolling in a marked police vehicle in San Jose, California. Officer Kirby heard a loud motorcycle traveling north on Saratoga Avenue. He pulled out of a parking lot to follow the motorcycle, driven by Gonzalez. At that moment there were two vehicles between Officer Kirby and Gonzalez. The vehicle directly in front of Officer Kirby subsequently changed lanes, leaving one car between them. Officer Kirby testified that by off-setting his vehicle to the right, he observed Gonzalez turn right without first using his turn signal or hand signal, as required by California law. Officer Kirby then passed the vehicle between himself and Gonzalez and fell in directly behind Gonzalez. Because no turn signal had been displayed, Officer Kirby activated his emergency lights and initiated a traffic stop. Gonzalez activated his right turn signal and pulled over.

Officer Wiley Griffin-Bagno testified that he also heard the loud motorcycle, which he noticed that Officer Kirby was following, and also followed. He testified that he did not see a traffic violation.

Gonzalez was wearing a jean jacket with "VAGOS" and "CALIFORNIA" sewn on the back of the vest. Officer Kirby recognized these patches as an indication that Gonzalez was a member of the Vagos motorcycle organization. On cross-examination, Officer Kirby testified

that he also stopped Gonzalez because he was a Vagos member. Based on his training and experience, Officer Kirby was nervous because he was aware that Vagos members have been known to carry weapons to defend themselves, do not like law enforcement officers, and are dangerous. Officer Kirby was also aware that a few weeks earlier, Vagos members from the Santa Cruz chapter had been attacked with hammers by rival gang members from the Hells Angels. The fact that Gonzalez was traveling alone, wearing his vest with the Vagos patches, and without fellow Vagos members for protection, raised Officer Kirby's awareness for Gonzalez's safety and concern that Gonzalez could be armed.

Officer Kirby was joined on the traffic stop by Officer Griffin-Bagno. As Gonzalez sat on his motorcycle, Officer Kirby approached Gonzalez from the left side while Officer Griffin-Bagno approached from the right. As they approached, Officer Griffin-Bagno observed a knife clipped to Gonzalez's vest which he recognized as a pocketknife. Officer Griffin-Bagno testified that he told Gonzalez he was going to take the knife for officer safety, and he retrieved the knife without incident. Officer Griffin-Bagno then inspected the folded pocketknife by manipulating it to open it for the purpose of determining whether the knife was illegal. He testified that he opened it with a flick of the wrist, and also by using the thumb stud. He opined that the knife was both a snap-blade and a spring-assisted-blade. He testified that he did not see any alterations to the knife. He decided it was an illegal knife, and so informed Officer Kirby and Officer Byers, who had also arrived at the scene.

Gonzalez was ordered to move to the patrol car. Officer Kirby testified that Officer Griffin-Bagno said the knife was an illegal knife. When Officer Kirby saw the knife, he recognized it as a pocketknife. He indicated that when he first saw the knife, he could not tell whether it had a spring or not. Officer Kirby then inspected the knife by opening it to see if it was illegal. He said that he tested whether the knife had a spring by pushing on the thumb stud located on the blade. He said that blade was deployed by pushing on the thumb stud. He also said that he could open the knife with a flick of the wrist. He also testified that the knife had a spring on it, so it sprung open. He testified that the knife was a switchblade in violation of

California Penal Code Section 653k. Officer Kirby then placed Gonzalez under arrest for possession of an unlawful switchblade knife.

Officer Kirby testified that Gonzalez had stopped his motorcycle at the entrance/exit driveway to a shopping center and in a red zone. Officer Kirby did not have a motorcycle endorsed driver's license, so he was prohibited from driving the motorcycle to a parking space in the parking lot. He testified that he also feared that if he left the motorcycle in the parking lot it would render it susceptible to theft or vandalism. In addition, the saddle bags attached to the motorcycle could not be secured and had no mechanism to keep them locked. For these reasons, the motorcycle was impounded. Officer Kirby testified that the decision to impound a vehicle was within his discretion according to Santa Clara County police regulations. On cross-examination, Officer Kirby said that he impounded the vehicle because he wanted to search the saddlebags.

During an inventory search of the motorcycle saddlebags, Officer Kirby found chrome metal knuckles, a firearm, and a clear plastic baggie that contained numerous pistol rounds. Upon seizing the firearm, Officer Kirby asked Gonzalez if it was loaded, and Gonzalez answered affirmatively. The firearm was a Steyr Mannlicher 9mm pistol with a magazine, and it was loaded.

Officer Kirby transported Gonzalez to the Pre Processing Center ("PPC"). Officer Kirby testified that he did not ask any questions of Gonzalez. While en route to the PPC, Gonzalez said, "I ain't gonna lie, I carry that for protection cause of my lifestyle." While at the PPC, Officer Kirby read Gonzalez his Miranda rights from his department issued card. Gonzalez verbally acknowledged that he understood his rights. He then waived his rights and made a statement that was digitally recorded. In summary, Gonzalez claimed that he carried the weapon for protection and that he had been threatened. When asked whether the threat was from the Hells Angels, Gonzalez stated that he did not want to say. He said he carried the weapon so that he could defend himself in case he gets attacked. He acknowledged that the Hells Angels were not his friends, and that he was aware of the altercation that took place between the Hells Angels and the Vagos in Santa Cruz.

Gonzalez was subsequently charged with being a felon in possession of a firearm, carrying a concealed weapon, possession of metal knuckles, and carrying a switchblade (collectively referred to as the "California charges"). He was not charged with any traffic violations. The California charges were subsequently dismissed, and it appears that the seized property was returned. (*See* Ex. B at USA0005168 (indicating that "motion to return property granted.")

Gonzalez moves to suppress the knife, pistol and ammunition, brass knuckles, and the statement made in the patrol car because the possession of the knife was not illegal and that the police officers' manipulation of the knife was an unlawful search of the knife.

### III.   LEGAL STANDARDS AND ANALYSIS

**1. Fourth Amendment**

The Fourth Amendment addresses "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347, 353 (1967). It protects "people, not places." *Id*. at 351. Evidence obtained in violation of the Fourth Amendment and evidence derived from it may be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963).

**2. Validity of the Initial Traffic Stop**

A police officer who has reasonable suspicion or probable cause to believe that a violation of traffic laws has occurred may stop the vehicle to investigate the infraction. *See Whren v. United States*, 517 U.S. 806, 812-13 (1996); *see also United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000). The government has the burden of proving by a preponderance of the evidence that Officer Kirby had lawful grounds to stop Gonzalez's motorcycle and that his subsequent search of the motorcycle complied with the Fourth Amendment. *See United States v. Cortez-Rivera*, 454 F.3d 1038, 1041-42 (9th Cir. 2006); *see also United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991) (*per curiam*); *United States v. Marshall*, 488 F.2d 1169, 1186 (9th Cir. 1973).

In *Terry v. Ohio*, the Supreme Court recognized that effective crime prevention and detection requires that officers be allowed to detain individuals briefly when there is reasonable suspicion to believe a crime has been committed. 392 U.S. 1, 21-24 (1968). In this context, the Fourth Amendment requires only some minimal level of objective justification for the officer's actions, measured in light of the totality of the circumstances. *See United States v. Sokolow*, 490 U.S. 1, 7-8 (1989). *Terry* also recognized that law enforcement officers need to protect themselves and the public at large from violence that may ensue in the course of such encounters. 392 U.S. at 23-24. It therefore held that if police officers are justified in believing that the individuals whose suspicious behavior they are investigating at close range are armed and presently dangerous to the officers or to others, they may conduct a limited protective search for concealed weapons. *Terry*, 392 U.S. at 24; *Adams v. Williams*, 407 U.S. 143, 146 (1972). An officer need not be certain that an individual is armed; the issue is whether a reasonably prudent man could believe, based on "specific and articulable facts," that his safety or that of others is in danger. *Terry*, 392 U.S. at 27; *see also Maryland v. Buie*, 494 U.S. 325, 327, 337 (1990).

Here, Officer Kirby conducted the traffic stop because he observed that Gonzalez failed to use turn signals prior to making his right turn. He testified that he maneuvered his patrol car to enable him to see the motorcycle even though there was a car between him and the motorcycle. He said that although it was dark, the motorcycle was illuminated by the trailing vehicle, and he would have seen the turn signal light if it had been activated. He noticed that Gonzalez used the turn signal light when he pulled over. Therefore, the court finds that there was reasonable suspicion to conduct the traffic stop.[1]

**3. Validity of the Seizure of the Pocketknife**

Based upon his training and experience, Officer Griffin-Bagno believed that members of the Vagos have a reputation for dangerousness and a dislike for law enforcement officers. He noticed the pocketknife, and recognized it as such, and was therefore justified to temporarily seize

---

[1] Gonzalez argued that he was not charged with a traffic offense, but the court assigns no significance to this fact in analyzing whether there was justification for the traffic stop.

the weapon for officer safety in the course of the traffic stop. *See Terry*, 392 U.S. at 24. The court finds that the seizure of the knife for officer safety was lawful because Gonzalez was armed and presently dangerous to the officers.

### 4. Manipulation of the Pocketknife was a Search Requiring Probable Cause

Gonzalez argues that the temporary seizure of the pocketknife for officer safety is different from seizing the pocketknife because it is evidence in plain view. He argues that the plain view exception to the warrant requirement may not be invoked when the police have less than probable cause to believe that an item is evidence of a crime or is contraband. Absent probable cause, Gonzalez argues that the search of the knife by testing it, or manipulating it, to determine whether it was an illegal knife, violated his Fourth Amendment rights. The government responds that the incriminatory nature of the weapon was clear when it was seen in plain view, and therefore its seizure was appropriate.

"A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (internal quotations omitted). Here, the seizure of the knife was appropriate for officer safety, but the examination and testing of the knife by Officer Griffin-Bagno constituted a search of the knife. Its suspected incriminating nature (being a switchblade) was not apparent when it was seized because it looked like a regular pocketknife and neither officer noticed signs that it had been altered.

In *Coolidge v. New Hampshire*, the Supreme Court stated that in certain circumstances a warrantless seizure by police of an item within plain view during a lawful search of a private area may be reasonable under the Fourth Amendment, if the initial intrusion was lawful, the discovery of the incriminating evidence was inadvertent, and the incriminating nature of the evidence is immediately apparent. *See* 403 U.S. 443, 465-71 (1971). In *Minnesota v. Dickerson*, the Supreme Court reiterated that for the plain view doctrine to justify a seizure, the incriminating nature of an object must be apparent. *See* 508 U.S. 366, 375 (1993). The Court explained that the incriminating nature of the object is immediately apparent if police have probable cause to believe an object in plain view is contraband. *See id.* The government bears the burden of

showing that the plain view doctrine, an exception to the warrant requirement of the Fourth Amendment, applies. *See Arkansas v. Sanders*, 442 U.S. 753, 759-60 (1979) (abrogated on other grounds by *California v. Acevedo*, 500 U.S. 565 (1991)).  Here, the seized knife was apparently a pocketknife, and the Officers did not believe, until after they manipulated it, that it was contraband or evidence of a crime.

In *Arizona v. Hicks*, the Supreme Court decided the question of whether the plain view doctrine may be invoked when police have less than probable cause to believe that the item in question is evidence of a crime or is contraband. *See* 480 U.S. 321, 326 (1987).  There, police officers justifiably entered a private apartment under exigent circumstances to investigate a shooting, and then located firearms and other evidence. *Id.* at 323-24.  Additionally, a police officer noticed a stereo system that seemed out of place in the otherwise squalid apartment. *Id.* The officer moved the turntable so that he could see and record its serial numbers, called in the information, and learned that the turntable had been taken in an armed robbery. *Id.*  He seized it and later obtained a warrant to seize the other components of the stereo. *Id.*

The *Hicks* court found that the movement of the stereo equipment in order to see the serial numbers was a search separate and apart from the search conducted in the apartment to investigate the shooting because it produced a new invasion of the defendant's privacy. *Id.* at 324-25.  Absent probable cause, the search of the stereo violated the defendant's Fourth Amendment rights. *Id*. at 326.  The mere fact that the item in question came lawfully within the officer's plain view did not supplant the requirement of probable cause. *Id*. at 327.  The *Hicks* Court found that

> the distinction between looking at a suspicious object in plain view and moving it even a few inches is much more than trivial for purposes of the Fourth Amendment. . . . A search is a search, even if it happens to disclose nothing but the bottom of a turntable.

*Id.* at 325; *see also United States v. Ewing* 638 F.3d 1226, 1231-34 (9th Cir. 2011) (holding that probable cause was required to inspect a roll of money seized in an auto search to determine that it was counterfeit); *United States v. Beal*, 810 F.2d 574, 577 (6th Cir. 1987) (holding that

probable cause was required to disassemble two pens that turned out to be .22 caliber weapons because the pens were not associated with criminal activity).

Here, as previously discussed, Officer Griffin-Bagno lawfully came into the possession of the pocketknife because it was possessed by a person who was being investigated for a traffic infraction, and it was seized for officer safety. But once the pocketknife was no longer in Gonzalez's possession, there was no need, and no authority to further search the knife. The objectives of a *Terry* search for a weapon had been fulfilled. Officer Kirby testified that he did not search the knife for officer safety, but rather to determine whether its possession was illegal. There was nothing about the pocketknife which was incriminatory because the possession of a pocketknife is not illegal, and the pocketknife was not associated with any crime being investigated. Officer Kirby did not have probable cause to search the knife because according to his testimony, it looked like a legal pocketknife.

The government elicited information from Officer Kirby indicating that he believed the knife was illegal because he had seen other Vagos members carry illegal weapons. The Ninth Circuit has held that membership in an organization does not reasonably lead to any inference as to the conduct of a member on a given occasion. *See Spivey v. Rocha*, 194 F.3d 971, 978 (9th Cir. 1999) ("the tendency of members of a gang to carry weapons does not lead reasonably to any inference as to whether a gang member was armed on a given occasion.") (internal quotations omitted). Officer Kirby confirmed that the knife looked like a pocketknife and he could not see a spring or anything else that made it appear to be a switchblade. Because the manipulation of the knife was not supported by probable cause to believe that the item was illegal, the court concludes that the inspection, or testing of the knife after it was seized violated Gonzalez's Fourth Amendment rights, and so the results of that inspection may not be used against Gonzalez.[2]

---

[2] In support of his motion to suppress, Gonzalez argues that because the California charges were dismissed for insufficient evidence, the search and seizure must have been illegal, or at least the district attorney agreed to that argument. But because Gonzalez also concedes that no motion to suppress was ever filed, the court does not find the dismissal of the California charges relevant to the issue before the court. Similarly, the government argues that because the California charges were ruled admissible as evidence of other crimes in a prior state murder prosecution – the same

**5. The Knife was a Legal Assisted-Opening Folding Pocketknife**

If, as discussed above, the manipulation of the knife was not an illegal search, and Gonzalez's knife was not actually illegal, then Gonzalez's arrest was not based upon probable cause.[3] The government recognizes that, according to the patent that was introduced at trial, the knife may not have been illegal, but argues the seizure was nevertheless appropriate, and upon inspection, the knife was illegal. A photograph of the knife was introduced into evidence. (*See* Ex. 3 at USA0007928; Ex. F; Ex F-1.)

California Penal Code Section 653k provides that:

> Every person who possesses in the passenger's or driver's area of any motor vehicle in any public place or place open to the public, carries upon his or her person . . . a switchblade knife having a blade two or more inches in length is guilty of a misdemeanor.
>
> For purposes of this section, "switchblade knife" means a knife having the appearance of a pocketknife and includes a spring-blade knife, snap-blade knife, gravity knife or any other similar type knife, the blade or blades of which are two or more inches in length and which can be released automatically by a flick of a button, pressure on the handle, flip of the wrist or other mechanical device, or is released by the weight of the blade or by any type of mechanism whatsoever. <u>"Switchblade knife" does not include a knife that opens with one hand utilizing thumb pressure applied solely to the blade of the knife or a thumb stud attached to the blade, provided that the knife has a detent or other mechanism that provides resistance that must be overcome in opening the blade,</u> or that biases the blade back toward its closed position.

Cal. Penal Code § 653k (effective January 1, 2002 to December 31, 2011) (emphasis added).

The photograph of the seized SOG pocketknife shows its patent on the blade. Officer Griffin-Bagno testified that it did not appear to him that the knife had been altered in any way.

---

murder as is alleged in Count Two of the indictment – then the search must have been legal. But the standard for admissibility under Rule 404(b) of the Federal Rules of Evidence is unrelated to the legal standards to determine the lawfulness of a search under the Fourth Amendment. *See* Fed. R. Evid. 404(b).

[3] Gonzalez argues, and the government does not contest, that under California law, a person may not be arrested for violation of a traffic infraction, and so the search of the saddlebags was not incident to arrest for the traffic violation.

1   Gonzalez introduced the description of SOG's patent, U.S. Patent No. 6,941,661 (filed Aug. 8,
2   2002), which indicates that

> [a] biasing system for the blade of the folding knife includes one component or assembly applying a force tending to move the knife blade from a closed position, nested in the handle, to an open position, extending from the handle. A second component or assembly resists opening the blade, particularly when the blade is in or near the closed position. <u>The resisting force is overcome by the opening force after the blade has been moved through a predetermined angle relative to the handle, so that the blade opens automatically</u>. A safety can be actuated to block opening and/or closing of the blade. <u>The blade can have a blunt projection upon which a user may press to move the blade through the predetermined opening angle</u>. A clip can be provided for convenient attachment of the folding knife to an object such as a garment.

(Ex. J) (emphasis added).[4]  Because the knife itself was not introduced into evidence, the court's ability to determine the characteristics of the knife was limited.  On one hand, the Officers' testimony was that the knife opened with the use of a thumb stud, and also with a flick of the wrist.  Officer Kirby testified that it opened with a spring, but no spring was visible.  Based upon the testimony that the knife was unaltered, Gonzalez's pocketknife was apparently a typical SOG pocketknife, U.S. Patent No. 6,941,661.  According to the patent, the knife is designed to resist opening when it is at or near the closed position.  Both Officers Kirby and Griffin-Bagno testified that it had a thumb tab, which is described in the patent as "a blunt projection," and they used the thumb tab to assist in opening the knife.  This satisfies the statutory exemption that a switchblade is not a pocketknife if it has such a design.  *See* Cal. Penal Code § 653k (effective January 1, 2002 to December 31, 2011).[5]  The statute is unambiguous.  Even accepting the officers' testimony that

---

[4] The court conditionally admitted SOG's patent subject to the government's objection during the evidentiary hearing on this motion, on the condition that the government would have additional time to examine the patent.  (*See* Mins. of Proceedings (ECF No. 1450); *see also* Tr. (ECF No. 1511) at 51-52.)  The court then provided the government an opportunity to address the validity of the patent in a supplemental brief.  (*See* Mins. of Proceedings (ECF No. 1450); *see also* Tr. (ECF No. 1511) at 64-70.)  The government's supplemental brief does not dispute the validity of the patent.  (*See* Supplemental Resp. (ECF No. 1531).)  As such, defendant's exhibit J is admitted.

[5] "The legislative history for Senate Bill No. 274 reflects its purpose was to narrow . . . existing statutory language to only allow knives to fall under the exemption from the switchblade law if that one-handed opening knife contains a detent or other mechanism. Such mechanisms ensure there is a measure of resistance (no matter how slight) that prevents the knife from being easily opened with a flick of the wrist. Moreover, a detent or similar mechanism is prudent and a matter of public safety as it will ensure that a

the knife opened with a flick of the wrist, it also was designed with a resisting force that had to be overcome to open the blade, which exempts the knife from the definition of switchblade knife. Confirming this conclusion, California's Court of Appeals later interpreted California Penal Code Section 653k and held that

> Although some one-handed opening knives can be opened with a strong flick of the wrist, so long as they contain a detent or similar mechanism that provides some resistance to opening the knife, then the exemption is triggered.

*In re Gilbert R.*, 149 Cal. Rptr. 3d 608, 612 (2012) (emphasis omitted). A horizontal flick of the wrist which opens a knife does not make the knife a switchblade, if a mechanism provides some resistance in opening the knife. *See Id.* The California court easily construed the statute in a manner consistent with its legislative history. *See Id.* (where the court cites directly to the legislative history of the bill that added the exemption). Accordingly, the court finds that Gonzalez's knife is not an illegal switchblade under Section 653k, and so his arrest for violating that statute was improper.

### 6. Application of the Good Faith Exception

The government argues that Officer Kirby acted in good faith when he arrested Gonzalez, and therefore suppression is inappropriate. Gonzalez argues that the good faith exception is not available when the officer does not have probable cause.

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381-82 (2014) (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). The Fourth Amendment allows for some mistakes on the part of government officials, and the Supreme Court has recognized that searches and seizures based on mistakes of fact and law can be reasonable. *See Heien v. North Carolina*, 135 S. Ct. 530, 539-40 (2014). The mistake of law must be "objectively reasonable," and in *Heien v. North Carolina*, a traffic stop based

---

blade will not inadvertently come open. . . . Although some one-handed opening knives can be opened with a strong flick of the wrist, so long as they contain a detent or similar mechanism that provides some resistance to opening the knife, then the exemption is triggered. These knives serve an important utility to many knife users, as well as firefighters, EMT personnel, hunters, fishermen, and others." *In re Gilbert R.*, 149 Cal. Rptr. 3d 608, 612 (2012) (emphasis omitted) (internal quotations omitted) (citation omitted).

upon North Carolina's tail-light law was upheld because the statute was ambiguous. *See id*. at 539, 540.[6] The Court emphasized that "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved." *Id*. at 539 (emphasis in original).[7] The Court cautioned that "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Id*. at 539-40. Justice Kagan explained in her concurring opinion that "the test is satisfied [only] when the law at issue is so doubtful in construction that a reasonable judge could agree with the officer's view." *Id*. at 541 (Kagan, J., concurring) (internal quotation marks omitted).

The Ninth Circuit has recognized the applicability of *Heien* in the arena of probable cause for an arrest. *See, e.g., Olsen v. City of Henderson*, 648 Fed. Appx. 628, 631 (9th Cir. 2016) (unpublished) ("The issue is whether defendant . . . had probable cause to believe that the statute was violated, and probable cause exists even if he made a reasonable mistake of law or fact." (citing *Heien*, 135 S. Ct. at 539)); *see also, e.g.*, *Cahaly v. Larosa,* 796 F.3d 399, 408 (4th Cir. 2015) ("Even if that determination was wrong as a matter of law, officers may have probable cause to arrest based on 'reasonable mistakes of law.'"); *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 442 (5th Cir. 2015) (finding important "the well-established rule that reasonable mistakes by police officers, even leading to the arrest of the wrong person, do not implicate the Fourth Amendment"). "Probable cause to arrest exists when [the] officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been committed . . . by the person being arrested." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)).

---

[6] The test for whether an officer's mistake of law was objectively reasonable "is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity." *Id.* at 539.

[7] Because subjective understanding is not relevant, the government may not defend the officer's mistaken legal interpretation on the ground that the officer was unaware of or untrained in the law. *Id.* at 541.

Gonzalez argues that neither searching the knife without probable cause (because its incriminating nature was not apparent), nor arresting him for possessing a knife which was not illegal, are objectively reasonable. The court agrees. Probable cause to search exists where "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Here, prior to their manipulation of the knife, the Officers had absolutely no facts to support their belief that the knife was illegal, so the search was not supported by probable cause.[8] Only their illegal search lead them to conclude that the knife was illegal. The Officers had no authority to search, and so there is no reasonable mistake of fact or law that is objectively reasonable.

But even if their manipulation of the knife was reasonable, it was not reasonable to conclude that the knife was illegal when comparing the characteristics of the knife to the statutory definition of switchblade. As discussed, the statute is not ambiguous, and specifically addresses the characteristics of Gonzalez's knife, which the Officers recognized when they examined the knife. The statute describes what is a switchblade, and also what is not a switchblade. The Officers had ample time to examine the knife and evaluate the applicability of the exemption. The Officers had an obligation to make a reasonable assessment of Section 653k before they decided to arrest Gonzalez. They did not testify to making any assessment of the exemption.[9] Their conclusion was not objectively reasonable.

In conclusion, the Officers had reasonable suspicion to detain Gonzalez for the traffic violation, and lawfully seized his pocketknife for their protection during their investigation, but they could not conduct a search of the pocketknife because they did not have probable cause, and

---

[8] As previously discussed, Vagos membership does not support a probable cause determination.

[9] Perhaps their conclusion of illegality was taken because, as Officer Kirby testified, he arrested Gonzalez for possessing the knife in order to discover evidence in the saddlebag. As a general proposition, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011) ("Efficient and evenhanded application of the law demands that we look to whether the arrest is objectively justified, rather than to the motive of the arresting officer.").

1 they could not arrest him because the knife was illegal. The search incident to his illegal arrest
2 yielded evidence which he moves to suppress. Evidence obtained in violation of the Fourth
3 Amendment and evidence derived from it may be suppressed as the "fruit of the poisonous tree."
4 *See Wong Sun*, 371 U.S. at 484-88. Here, the pocketknife as well as the results of the inventory
5 search of the saddlebags, and the subsequent statements to Officer Kirby, were derived from the
6 unlawful search of the pocketknife and arrest of Gonzalez. Accordingly, these items of evidence
7 should be suppressed.

## IV.   CONCLUSION AND RECOMMENDATION

IT IS THEREFORE RECOMMENDED that defendant Gonzalez's motion to suppress evidence (ECF No. 781) be GRANTED.

## V.   NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: April 25, 2019

_____
C.W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE